UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

John B.[1],

                         Plaintiff,

v.                                                         CASE # 19-cv-01113

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH HILLER, PLLC<br>  Counsel for Plaintiff<br>600 North Bailey Ave<br>Suite 1A<br>Amherst, NY 14226 | JUSTIN DAVID JONES, ESQ.<br>KENNETH R. HILLER, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL – REGION II<br>  Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | KATHERYN SARA POLLACK,<br>ESQ. |

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      The parties consented in accordance with a standing order to proceed before the undersigned. The court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Upon review of the administrative record and consideration of the parties' filings, the plaintiff's motion for judgment on the administrative

---

[1] In accordance with Standing Order in November 2020, to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

record is **DENIED**, the defendant's motion for judgment on the administrative record is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on March 11, 1971, and has greater than a high school education. (Tr. 68). Generally, plaintiff's alleged disability at the time of application was herniated discs, asthma, high blood pressure, and GERD. (Tr. 301). His alleged onset date of disability was September 9, 2009. (Tr. 298). His date last insured was December 31, 2015. (Tr. 15).

### B.     Procedural History

On December 24, 2013, plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (Tr. 108, 256). Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 7, 2016, plaintiff filed an application for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. (Tr. 267-278). On April 7, 2016, plaintiff appeared before the ALJ, Brian LeCours for both claims. (Tr. 63-107). On July 8, 2016 ALJ LeCours issued a written decision finding plaintiff not disabled under the Social Security Act. (Tr. 119-139). Plaintiff requested Appeals Council review. (Tr. 199). The Appeals Council subsequently remanded the case for further administrative proceedings. (Tr. 204-212).

On August 13, 2018, ALJ Lynette Gohr held a new hearing but the plaintiff waived his appearance and requested a closed period of disability until December 28, 2017. (Tr. 13, 34-62, 249). Plaintiff's attorney, medical expert Dr. Arthur Lorber, and vocational expert Darren Wright testified at the hearing. (Tr. 34-62). On November 16, 2018, ALJ Gohr issued an unfavorable decision finding that plaintiff was not disabled within the meaning of the Act from September 9,

2009 through the date of the decision. (Tr. 27). On June 24, 2019, the Appeals Council ("AC") denied plaintiff's request for review. (Tr. 1-6). Thereafter, plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since September 9, 2009, the alleged onset date (404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: asthma, degenerative joint disease of the right shoulder with rotator cuff and bursitis, degenerative disc disease and spondylosis of the lumbar spine, and obesity (20 CFR 44.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps and stairs and occasionally climb ladders ropes and scaffolds. The claimant can frequently stoop, crouch, kneel and occasionally crawl. The claimant can occasionally reach overhead with the dominant right upper extremity. The claimant can occasionally work at unprotected heights and around dangerous machinery. The claimant can frequently operate foot controls with the bilateral feet. The claimant must avoid concentrated exposure to extreme heat extreme cold humidity wetness dust odors fumes pulmonary irritants and vibration.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 11, 1971 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1536 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1534 and 416.694).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 9, 2009, through the date of the decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 9-27).

## II.   THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.   Plaintiff's Arguments

Plaintiff makes two arguments in support of his motion for judgment on the pleadings. First, he argues the ALJ did not reconcile the discrepancies between the vocational expert's interrogatories and the Dictionary of Occupational titles. Second, the ALJ improperly rejected a treating physician opinion. (Dkt. No. 8 at 1 [Plaintiff's Mem. of Law]).

### B.   Defendant's Arguments

In response, defendant asserts two arguments. First, defendant argues the ALJ properly determined that plaintiff could perform jobs existing in significant numbers in the National economy. (Dkt. No. 11 at 20 [Defendant's Mem. of Law]). Second, defendant argues the ALJ properly evaluated the medical and other evidence of record in determining that plaintiff could still perform a range of light work. (Dkt. No. 11 at 23).

## III.   RELEVANT LEGAL STANDARD

### A.   Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's

determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

### IV. ANALYSIS

#### A. Step Five Finding

Plaintiff argues the ALJ did not reconcile discrepancies between the vocational expert testimony and the Dictionary of Occupational Titles[2] (DOT) regarding reaching limitations. Vocational expert Darren Wright was present and testified at the hearing on June 26, 2018 (Tr. 34, 374). The hypothetical to Mr. Wright for light work contained additional limitations, including occasionally reach overhead with the right upper extremity. (Tr. 57). Mr. Wright identified three jobs. (Tr. 58). When asked if his testimony was consistent with the DOT, Mr. Wright testified that

---

[2] U.S. Department of Labor's *Dictionary of Occupational Titles* (4th ed., rev. 1991).

6

it was, and specified that his opinion with respect to the sit/stand option and overhead reaching limitation were based on his experience in the vocational field. (Tr. 60).

After the hearing, the ALJ also sent interrogatories to vocational expert Jay Steinbrenner, asking him to consider a hypothetical individual of plaintiff's age, education, work experience, and RFC, which again included occasionally reach overhead with the dominant right upper extremity. (Tr. 376-379). Mr. Steinbrenner responded that such an individual could perform the unskilled light work of a cashier II (DOT No. 211.462-010, 701, 662 jobs nationally), mailroom clerk (DOT No. 209.687-026, 56,745 jobs nationally), and small product assembler (DOT No. 706.684-022, 194,718 jobs nationally). (Tr. 378). Mr. Steinbrenner stated that there were no conflicts between the occupational evidence he provided and the DOT and Selected Characteristics of Occupations (SCO). (Tr. 378-79). At Step Five of the sequential evaluation, the ALJ noted that responses to the vocational interrogatories post-hearing were relied upon in the final decision. (Tr. 27).

Plaintiff asserts there is a conflict between the DOT and Mr. Steinbrenner's testimony which was not reconciled by the ALJ. (Dkt. No 8 at 15). Plaintiff's reliance on *Lockwood v. Commissioner of Social Security Administration*, 914 F.3d 87 (2d Cir. 2019) is misplaced as that case involved an RFC excluding all overhead reaching tasks with both hands. *Lockwood*, 914 F.3d at 92. Unlike the facts in *Lockwood*, Judge Gohr's RFC did not preclude plaintiff from all reaching but limited him to occasional overhead reaching with the right arm only. (Tr. 18).

Courts in this district have repeatedly found that when the DOT is silent on an issue, no actual conflict exists between the VE testimony and the DOT. *See Murray v. Colvin*, No. 15- CV-6384P, 2016 WL 5335545, at *13 (W.D.N.Y. Sept. 23, 2016) (ALJ was not required to further examine the VE's testimony regarding a leg elevation option because no actual conflict existed

between the VE's testimony and the DOT); *Pitts v. Colvin*, No. 14-CV-317S, 2015 WL 3823781, at *6 (W.D.N.Y. June 19, 2015) (there was no conflict between the VE's testimony and the DOT "because the DOT job description does not address the availability of a sit/stand option"); *Pahl v. Colvin*, No. 12-CV-3168, 2013 WL 3761545, at *6 (W.D.N.Y. July 16, 2013) ("it is not error for the ALJ to rely on the VE's testimony of a sit/stand option so long as there is no actual conflict between the VE's testimony and the ... DOT[;] [n]o such conflict existed here because the DOT does not address the availability of a sit/stand option") (internal quotations omitted). Although not cited by the ALJ in her decision, at the hearing, Mr. Wright stated the DOT is silent on overheard reaching, and the light jobs he identified were based on his experience in the vocational field. (Tr. 60). The DOT is not comprehensive and vocational experts are used to resolve complex vocational issues. SSR 00-4p. Both Mr. Wright and Mr. Steinbrenner were performing their duty to identify which of the occupations in the DOT fell within the subset of those available to an individual with limitations using the right arm. *McIntyre v. Colvin* 758 F.3d at 152 (2d. Cir. 2014)(citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). ALJ Gohr was permitted to rely on the vocational expert interrogatories for the proposed hypothetical as there was no genuine conflict and the interrogatory constituted substantial evidence. SSR 00-4p

### B. RFC

Plaintiff argues the ALJ improperly rejected the opinion of treating physician Dr. McNulty and therefore the decision was not supported by substantial evidence. Dr. McNulty began treating plaintiff in October 2009 with regular follow ups until May 2010. (Tr. 1197, 1220). There was also a follow-up in July 2011. (Tr. 459). In November 2010, one month after plaintiff stopped working, Dr. McNulty opined that plaintiff could return to his job as a utility operator eight hours per day, subject to certain limitations, including that he lift no more than 25 pounds, and change positions as needed. (Tr. 1205, 1209). Dr. McNulty continued to report that plaintiff could return to work

eight-hours per day with same limitations in January, February, and May 2010. (Tr. 1212-1213, 1216, 1222). In July 2011, plaintiff returned to Dr. McNulty after more than a year's absence and he found plaintiff had a mild-moderate 37 percent permanent disability. (Tr. 459-461).

To be sure, Social Security regulations require ALJs to "evaluate every medical opinion [received]" from both treating and non-treating sources. 20 CFR §404.1527(c). The Second Circuit has held that "the opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2dCir. 1999). If the ALJ does not give the opinion controlling weight, the ALJ must "explicitly consider" the following regulatory factors at 20 C.F.R. § 416.927(c)(1)-(5), described by the Court as the "Burgess Factors":

> (1) the frequency, length, nature, and extent of the treatment relationship;
> (2) the amount of medical evidence supporting the opinion;
> (3) the consistency of the opinion with the remaining medical evidence; and
> (4) whether the physician is a specialist.

*Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (per curiam) (*citing Burgess v. Astrue*, 537 F.3d 117, 129 (*citing* 20 C.F.R. § 404.1527(c)(2)) (other citations omitted).

While 20 C.F.R. § 404.1527 provides a number of factors that an ALJ considers when evaluating medical opinions, "[a]n ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions. *Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

In considering Dr. McNulty's opinions, ALJ Gohr explicitly considered the treating source relationship with a longitudinal treatment history. (Tr. 24-25). The limitations assessed by Dr. McNulty, including that plaintiff could lift 25 pounds and work eight-hours per day, were generally

9

consistent with the ALJ's finding that plaintiff was capable of a range of light work[3]. (Tr. 25; *see* Tr. 1205). However, the ALJ appropriately gave only limited weight to Dr. McNulty's opinions, as they were temporary opinions, assessing plaintiff's present functioning, and were somewhat inconsistent with other evidence from the remainder of the period at issue. *See* 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4) (supportability and consistency are relevant consideration in evaluating medical opinion evidence). The ALJ also considered that after a July 2010 visit to Dr. McNulty, Plaintiff did not return for a year. *Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition"). At the time, plaintiff reported that he was undergoing vocational training, and was not interested in pain relief. (Tr. 459). Plaintiff's subsequent medical treatment records document only sporadic back-related complaints, and limited treatment. (*See* Tr. 405, 517-18, 532). Indeed, when plaintiff's treating physician suggested pain management and physical therapy, plaintiff refused. (Tr. 1155). Moreover, as the ALJ noted, during visits in 2017, plaintiff reported to his primary care providers that he felt "comfortable and manageable at his current level of function," he could sit for long periods, and his back pain was tolerable. (Tr. 22; *see* Tr. 1125, 1133).

      The ALJ properly declined to adopt Dr. McNulty's findings that plaintiff had a mild-moderate 37 percent disability, and 100 percent temporary disability, as such findings rely on different standards, and are of little value in determining an individual's functional limitations. *See* 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (noting that the final responsibility for determining disability and the RFC is "reserved to the Commissioner," and a physician's statement that an individual is "disabled" or "unable to work" is not binding thereon); *Snell v. Apfel*, 177 F.3d 128,

---

[3] Light work involves lifting no more than 20 pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b)

133 (2d Cir. 1999) (noting that, when making a finding as to disability, an ALJ properly "considers the data that physicians provide but draws [his] own conclusions").

Dr. McNulty's opinion that plaintiff needed to change position was not adopted by the ALJ. However, the ALJ appropriately weighed the conflicting medical opinion evidence and substantial evidence supported his decision. *See Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002) (stating that "genuine conflicts in the medical evidence are for the Commissioner to resolve"). Indeed, as the ALJ observed, medical expert Dr. Lorber specifically considered Dr. McNulty's opinion but found that it was not supported by the evidence of record, including plaintiff's return to work as a long-distance truck driver. (Tr. 23; *see* Tr. 52-54); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (physician opinion warranted less weight where it was "not consistent with other substantial evidence in the record, such as the opinions of other medical experts")).

It is well-established that the opinion of a medical expert, such as Dr. Lorber, constitutes substantial evidence in support of an ALJ's decision. *See* 20 C.F.R. §§ 404.1513a(b)(2), 416.913a(b)(2) (an ALJ will consider a medical expert's opinion using the prescribed regulatory factors); *see also Anselm v. Comm'r of Soc. Sec.*, 737 F. App'x 552, 555-56 (2d Cir. 2018) (finding that opinions of physicians who had reviewed the claimant's file supported the RFC determination and undermined treating physician opinions); *Botta v. Colvin*, 669 F. App'x 583, 584 (2d Cir. 2016) (ALJ properly relied on medical expert testimony in assessing claimant's functioning). Dr. Lorber reviewed the entire record, and opined plaintiff could occasionally lift 20 pounds, and frequently lift 10 pounds; stand and walk up to eight hours and sit for up to eight hours per day; frequently climb ramps/stairs, operate foot pedals, stoop, crouch, and kneel; occasionally crawl, and reach overhead with his right shoulder. (Tr. 50-51). The ALJ gave significant weight to Dr. Lorber's opinion based on his expertise in disability evaluation, his review of the entire record, as well as the consistency of his opinion with the record as a whole. (Tr. 23; *see* 20 C.F.R. §§

404.1527(c)(4),(6), 416.927(c)(4),(6) (consistency of an opinion with other medical evidence and understanding of disability programs weigh in favor of accepting a particular medical opinion)). Moreover, the ALJ appropriately noted that Dr. Lorber thoroughly cited and discussed the evidence he considered in evaluating plaintiff's functioning. (Tr. 23; *see* Tr. 40-51) 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Although the ALJ properly cited additional evidence to support the RFC finding, he was also entitled to rely on the opinion of Dr. Lorber because it was consistent with the medical record. *See David W. v. Comm'r of Soc. Sec.*, 8:17-CV-0734 (CFH), 2018 WL 6088095, at *8 (N.D.N.Y. Nov. 20, 2018); *see also Hernandez v. Comm'r of Soc. Sec.*, 116CV07584ERSDA, 2018 WL 3300693, at *16 (S.D.N.Y. Feb. 15, 2018) (adopted *sub nom*. *Hernandez v. Berryhill*, 16CIV7584ERSDA, 2018 WL 1581688 (S.D.N.Y. Mar. 28, 2018); "The ALJ is permitted to rely heavily on the opinion evidence of a medical expert when assessing RFC, so long as the opinion is consistent with the evidence in the medical record"). Consistent with Dr. Lorber's opinion, consultative examiner Dr. Balderman observed largely unremarkable physical examination findings, including that plaintiff's gait and stance were normal, and he had full range of motion in his cervical spine, shoulders, elbows, forearms, wrists, hips, knees, and ankles; normal deep tendon reflexes and sensation, and full (5/5) strength in his upper and lower extremities; and hand and finger dexterity was intact, and he had full (5/5) grip strength bilaterally. (Tr. 21, *referring to* Tr. 502-05). In formulating plaintiff's RFC, the ALJ additionally considered consultative examiner Dr. Dave who also observed many normal physical examination findings, including full range of motion and full strength in his upper and lower extremities. (Tr. 21; *see* Tr. 1187-1188).

The ALJ did a comprehensive review of plaintiff's medical conditions, course of treatment, physical examination findings, reported activities, and opinion evidence. (Tr. 18-25).

The ALJ's RFC was supported by substantial evidence and the Court must defer to the ALJ's decision. *See Vilardi v. Astrue*, 447 Fed. App'x 271, 272 (2d Cir. Jan. 10, 2012) (summary order); *Rouse v. Colvin*, No. 14-CV-817S, 2015 WL 7431403, at *6 (W.D.N.Y. Nov. 23, 2015) (unpublished).

**ACCORDINGLY, it is**

**ORDERED** that plaintiff's motion for judgment on the pleadings (Dkt. No. 8) is **DENIED**; and it is further

**ORDERED** that defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED.**

Dated: February 22, 2021  
Rochester, New York

*J. Gregory Wehrman*  
HON. J. Gregory Wehrman  
United States Magistrate Judge